**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| **Premiere Antoine Pouncey,** | ) | **Civil Action No.:_____** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT** |
| | ) | |
| **Trans Union, LLC,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## COMPLAINT

1.      This is an action brought by Plaintiff, Premiere Antoine Pouncey, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2.      The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3.      The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4.      Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e(b) and 1681i, which are two of the cornerstone provisions of the FCRA.

6. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

7. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

2

## JURISDICTION AND VENUE

8.     This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331 and 1367.

9.     Venue is proper in the Florence Division because the Plaintiff resides in Dillon County, and the Defendant transacted business in this division.

## PARTIES

10.     Plaintiff, Premiere Antoine Pouncey, is a resident and citizen of the State of South Carolina, Dillon County, and is over the age of twenty-one (21) years.  Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

11.     Defendant Trans Union, LLC, ("Trans Union") is a limited liability company registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, The Prentice-Hall Corporation System, Inc., 100 Coastal Drive, Suite 210, Charleston, South Carolina 29492.  At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

12.     Defendant Trans Union is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a.  Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

13.     Defendant disburses such consumer reports to third parties under contract for monetary compensation.

14.     Defendant's acts and omissions alleged herein are in violation of the Fair Credit

3

Reporting Act which requires Defendant to provide a consumer with a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and which requires Defendant to conduct a reasonable reinvestigation of disputed information received from the Plaintiff.

15.     The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's Trans Union credit file, and failed to reinvestigate Plaintiff's disputes.  Defendant also disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to suffer damages as set forth herein.

## FACTUAL ALLEGATIONS

16.     In 2025, Plaintiff decided he wanted to start a new business.  Plaintiff does not use a lot of credit, but he knew starting a new business would require his credit to be excellent.  Accordingly, Plaintiff decided to check his credit reports.

17.     In August 2025, when Plaintiff reviewed copies of his credit reports, he discovered several fraudulent accounts were reporting as belonging to him.  Specifically, Sheffield Financial, Acct #125918****, Navy Federal Credit Union, Acct #406095560797****, South Carolina St Cu, Acct #4991592000031****, Wells Fargo Card Services, Acct #577442242328****, Credit One Bank, Acct. #379365****, Capital One Bank, Acct #517805****, and Capital One Bank, Acct #515676 were all reporting accounts in Plaintiff's name.

18.     On September 7, 2025, Plaintiff filed an Identity Theft Report with the Federal

Trade Commission. In his report, Plaintiff specifically identified the Capital One, Credit One, SC State Federal Credit Union, and Wells Fargo accounts as fraudulent. Plaintiff also identified unauthorized and/or fraudulent credit inquiries of his credit by Resurgent Capital Service, TD Bank, TBOM – Aspire MC, One Main, Progressive Insurance, Credit One Bank, Capital One Bank, and Discover.

19. That same day, Plaintiff filed a second Identity Theft Report supplementing his first report by adding Navy Federal Credit Union as an additional fraudulent account.

20. In September 2025, Plaintiff sent a dispute letter to Defendant, wherein Plaintiff informed Defendant there were several fraudulent accounts reporting on his credit report that were not his. With his letter, Plaintiff provided Defendant with proof of his identity, and a copy of his FTC Identity Theft Reports.

21. On October 27, 2025, Defendant forwarded Plaintiff Investigation Results, wherein Defendant informed Plaintiff that, in response to his dispute, the Navy Federal Credit Union, Acct #406095560797****, South Carolina St Cu, Acct #4991592000031****, and Wells Fargo Card Services, Acct #577442242328****, accounts were deleted from Plaintiff's credit report. With the Investigation Results, Defendant also included an updated Trans Union credit report dated October 27, 2025, which confirmed deletion of the Navy Federal Credit Union, South Carolina State Credit Union, and Wells Fargo Card Services accounts from Plaintiff's credit report. Unfortunately, Defendant continued to report the fraudulent Sheffield Financial Account as a charged-off account belonging to Plaintiff with a balance of $4,307.

22. On October 31, 2025, Defendant forwarded Plaintiff Investigation Results, wherein

Defendant again informed Plaintiff that, in response to his dispute, the Navy Federal Credit Union, Acct #406095560797****, South Carolina St Cu, Acct #4991592000031****, and Wells Fargo Card Services, Acct #577442242328****, accounts were deleted from Plaintiff's credit report.

23.     On February 27, 2026, Plaintiff filed a complaint with the Consumer Financial Protection Bureau (hereinafter "CFPB"), wherein he stated he had submitted a written request to Defendant in or around October 2025 identifying specific fraudulent tradelines, and that with his letter, he provided proof of his identity, identity theft reports and requested Defendant block said information.

24.     On or about February 27, 2026, Plaintiff sent Defendant a second dispute letter by certified mail regarding the ongoing reporting of several fraudulent accounts that were the result of a data breach.  In this letter, Plaintiff stated that in September of 2025 he had submitted a dispute letter to Defendant which included proof of his identity, a copy of his FTC Identity Theft Affidavit, and the identification of the fraudulent accounts that were opened in his name without his knowledge or permission.  In this letter, Plaintiff informed Defendant that several fraudulent accounts were continuing to report on his Trans Union credit report.  Specifically, Plaintiff disputed Sheffield Financial, Acct. #125918****, Midland Credit Management, Inc., Acct. #33283****, and Midland Credit Management, Inc., Acct. #33419****.  Plaintiff also informed Defendant he had filed a CFPB Complaint. Finally, Plaintiff requested Defendant immediately delete all of the derogatory information from his credit report.

25.     Defendant received Plaintiff's dispute letter on March 5, 2026.

6

26.     On March 11, 2026, Defendant forwarded Plaintiff Investigation Results, wherein Defendant informed Plaintiff the previously deleted Sheffield Financial, Acct. #125918****, had been verified and thus, the account was reinserted on Plaintiff's credit report. However, Plaintiff was never provided anything from Defendant showing the Sheffield Account had been removed. With the Investigation Results, Defendant also included an updated Trans Union credit report dated March 11, 2026, which confirmed the Sheffield Account was in fact still reporting on Plaintiff's Trans Union credit report as a charged-off account belonging to Plaintiff, with $4,285 originally charged off and $4,307 past due.

27.     On March 13, 2026, Defendant forwarded a letter to Plaintiff enclosing a copy Plaintiff's rights under the Fair Credit Reporting Act.

28.     On March 13, 2026, Defendant sent a second letter to Plaintiff stating it had reviewed Plaintiff's correspondence, but was unable to process Plaintiff's request because Defendant could not determine the nature of Plaintiff's request or the request was illegible.

29.     On March 13, 2026, Plaintiff filed a new FTC Identity Theft Report regarding the fraudulent Sheffield Financial Account.

30.     On March 16, 2026, Plaintiff obtained a copy of his Trans Union credit report, which continued to report the fraudulent Sheffield Financial Account as a charged-off account belonging to Plaintiff having a past due balance of $4,307.

31.     On or about March 16, 2026, Plaintiff sent a request to Defendant via certified mail requesting Defendant to "block all fraudulent or negatively impacting accounts listed in the FTC Report, all collections listed in the FTC Report, and all hard inquiries from my

consumer credit file….." With his letter, Plaintiff included a copy of his March 13, 2026, Identity Theft Report.

32.    On or about March 22, 2026, Defendant responded to Plaintiff's complaint through the CFPB portal. In that response, Defendant informed Plaintiff it had determined the information submitted by Plaintiff to the CFPB portal included disputed information appearing on Plaintiff's credit report, and a copy of Plaintiff's Trans Union credit report was mailed to the current address on file for Plaintiff.

33.    On or about March 23, 2026, Plaintiff sent a letter to Defendant's Fraud Victim Assistance Department via certified mail, wherein Plaintiff responded to Defendant's March 13, 2026, letter stating it was unable to determine the nature of his request or that it was illegible. In his letter, Plaintiff again identified the fraudulent Sheffield Financial Account and provided a copy of his passport, State ID, and a copy of the FTC Identity Theft Report he filed. Plaintiff again asked Defendant to block the information and stated a copy of his letter would be forwarded to the CFPB.

34.    On or about March 25, 2026, Defendant sent Plaintiff his Trans Union credit report, which confirmed Defendant was continuing to report the Sheffield Account on Plaintiff's Trans Union credit report as a charged-off account belonging to Plaintiff, with $4,285 originally charged off and $4,307 past due.

35.    Defendant received Plaintiff's March 23, 2026, letter on March 27, 2026.

36.    On or about April 8, 2026, Plaintiff sent Defendant a letter directed to its Legal Department/ Consumer Relations Executive Liaison. In this letter, Plaintiff again requested Defendant comply with the FCRA by deleting the previously disputed inaccurate

8

items from his credit report, providing him a complete description of the procedures used by Defendant in its reinvestigation, and by identifying all of the parties contacted by Defendant during its reinvestigation.

37. On April 14, 2026, Defendant forwarded Plaintiff Investigation Results, wherein Defendant informed Plaintiff it had investigated the disputed Sheffield Financial account and the disputed information was verified as accurate. As a result, the fraudulent Account remained on Plaintiff's credit report. Defendant also notified Plaintiff it had updated the telephone numbers reporting on his credit report. With the Investigation Results, Defendant included an updated Trans Union credit report dated April 14, 2026, which confirmed Defendant was continuing to report the fraudulent Sheffield Account on Plaintiff's Trans Union credit report.

38. To date, Defendant continues to wrongfully refuse to block the fraudulent Sheffield Financial account and several unauthorized inquiries from Plaintiff's Trans Union credit file. Accordingly, the fraudulent account continues to be reported on Plaintiff's credit report as a derogatory account belonging to Plaintiff which is causing the Plaintiff damages.

39. In the alternative, Defendant wrongfully reinserted the fraudulent Sheffield Financial account back onto Plaintiff's Trans Union credit report.

40 Defendant repeatedly failed to make a reasonable investigation into Plaintiff's disputes.

41. Upon receipt of the ACDV responses from the furnishers of the disputed account information, Defendant simply accepted the furnishers' verifications of the accounts and did not undertake to perform any investigation of its own.

42.     For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers' information.  The CRA must make some independent investigation of its own.  "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. Trans Union Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. Trans Union*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

43.     If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

44.     Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

45.     While Defendant has continued to report false, fraudulent, and inaccurate information on Plaintiff's credit reports, those credit reports have been viewed by Capital One, Midland Credit Management, FEB-Destiny, Capital One Auto Finance, T-Mobile,

and Best Egg causing further harm to Plaintiff.

## COUNT ONE
(Violation of the Fair Credit Reporting Act)

46.     The Plaintiff adopts the averments and allegations of paragraphs 16 through 45 hereinbefore as if fully set forth herein.

47.     Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 *et seq.*, including but not limited to:  (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

48.     Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

49.     As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit, lost credit opportunities, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, time spent trying to fix his Trans Union credit report, physical pain and sickness, frustration, humiliation, embarrassment, mental anguish, and out-of-pocket expenses.

50.     Plaintiff is entitled to actual damages in an amount to be determined by the jury.

51.     In addition, the Plaintiff has incurred litigation expenses and attorney's fees which,

but for the acts and omissions of Defendant alleged herein, would not have been necessary.

52.     Plaintiff is entitled to his attorney's fees, pursuant to 15 U.S.C. §1681o(a)(2).

## COUNT TWO
### (Fair Credit Reporting Act)

53.     The Plaintiff adopts the averments and allegations of paragraphs 16 through 52 hereinbefore as if fully set forth herein.

54.     Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to:   (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

55.     Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

56.     Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

57.     As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit, lost credit opportunities, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, family discord, time spent trying to correct his Trans Union credit report, physical pain and sickness, frustration, humiliation, embarrassment, mental anguish, and out of pocket expenses.

12

58.    Plaintiff is entitled to actual damages in an amount to be determined by the jury.

59.    In addition, the Plaintiff has incurred litigation expenses, and attorney's' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

60.    Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights.    Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

61.    Plaintiff is entitled to his attorney's fees, pursuant to 15 U.S.C. §1681n(a).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.    Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.    Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.    Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2);

D.    For this trial to be heard by a jury; and

E.    For such other and further relief as the Court may deem just and proper.

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed.  ID No.  10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

13

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*/s/ Penny Hays Cauley*
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Trans Union, LLC
c/o The Prentice-Hall Corporation System, Inc.- Registered Agent
100 Coastal Drive, Suite 210
Charleston, SC 29492

14